FILED
U.S. DIST COURT
MIDDLE DIST. OF LA
2006 MAR 15 P 4: 13

SIGN_____ DC
CIVIL ACTION CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARVIN C. BREAUD AND
VICKI BREAUD
    PLAINTIFFS

DOCKET NO. 03-CV 860

VERSUS

JUDGE BRADY

WERNER ENTERPRISES,
INC. OF NEBRASKA, AND
JOHN HOLLAND
    DEFENDANTS

MAGISTRATE JUDGE
REIDLINGER

### SUPPLEMENTAL MEMORANDUM IN OPPOSITION
### TO PLAINTIFFS' MOTION IN LIMINE

**NOW INTO COURT,** through undersigned counsel, come defendants, Werner Enterprises, Inc. and John Holland (hereinafter collectively referred to as the "defendants"), who submit their Supplemental Memorandum in Opposition to Plaintiffs' Motion In Limine To Exclude Expert Witness Testimony of Dr. Charles E. Bain. For brevity's sake, defendants do not duplicate arguments from their initial opposition brief.

### ARGUMENT

Fed. R. Evid. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702, as amended in 2000, provides the basis for the admission of expert testimony in federal courts. A witness, who has gained expertise via knowledge, skill, experience, training or education, may testify about his opinions if the testimony is based on sufficient facts or data, if the testimony

is based upon reliable principles and methods, and if the witness has applied those principles and methods reliably to the facts of the case.

## I.   Delta V, Acceleration and Conservation of Momentum

Dr. Ted Bain's opinion testimony that the Werner Enterprises' Peterbilt traveled approximately ten feet at .075g, that the Peterbilt achieved a speed of 4.7 miles per hour prior to impact and that the delta v (impact related change in velocity) at the point of collision between the Peterbilt and Mr. Breaux's Dodge truck would have not been any greater than 3.8 mph passes muster under the four-part 702 test. First, Dr. Bain's Bachelor of Engineering (B.Eng) with first class honors from the Royal Military College including extensive course work in mathematics, physics, chemistry, mechanics, statistics, thermodynamics, metallurgy, chemical process engineering, nuclear science and nuclear engineering, his training at the Northwestern University Traffic Institute and his extensive experience with high and low velocity vehicle collisions provide the "knowledge, skill, experience, training, or education" required by article 702.

Second, Dr. Bain's reliance on photographs, deposition testimony, truck dimensions and weights and police report provide the necessary factual background on which to base his opinions. Opinions from two very diverse district courts have ruled that experts may rely on this type of factual background in rendering opinions regarding vehicle collisions.[1] The first, a district court in

---

[1]   Dr. Bain testified that since the accident was low impact and did not involve gouges in the pavement, broken glass, release of automotive fluids, etc., there was no need to physically inspect the site of the accident. The photographs of the trailer and the Dodge truck support this testimony, as does, the total damage estimate of $291. The plaintiffs provided no authority or treatise holding otherwise. Plaintiffs also questioned why Dr. Bain relied on black and white photos of the Dodge truck. The color photos referred to during the Daubert hearing were in the custody of the plaintiffs who chose to only provide black and white photo copies to the defendants during discovery.

2

Massachusetts ruled that a plaintiff's expert with a degree in chemical engineering could base his opinions on factors including photographs, deposition testimony and truck dimensions. *Giard v. Darby*, 360 F. Supp. 2d 229, 235 (Mass. 2005). The second, a district court in Texas ruled that a defendant's expert could rely on a factual background taken from photographs, police reports and witness statements in formulating his opinions. *Thomson v. Rook*, 255 F. Supp. 2d 584, 585 (E.D. Tex. 2001).[2]

Finally, Dr. Bain testified that he applied facts taken from his investigation to the relevant principles and methods including calculation of velocity, basic physics and the conservation of momentum principle in arriving at his opinions. The Giard and Thomson courts held that similar experts properly reached their opinions using methods very similar to those of Dr. Bain's approach. The *Giard* court found that the expert's "[chemical] engineering background and experience enabled him to apply basic physics to form his opinions in the case at the bar." **Id.** at 236. The *Thomson* court similarly held that "[a]pplying precepts of Daubert and its progeny to the instant case, the undersigned concludes that there are articles, books, and other experts in the automobile accident reconstruction field that validate the methodology used by [the expert] for calculating speed and distance traveled by the vehicles involved..." **Id.** at 586.

## II. Breaux's Impact-Related Motion and Lack of Differential Movement Between Breaux's Lumbar Spine and Thorax

Dr. Bain's opinion testimony that the plaintiff's post-impact movement consisted of his torso moving into the forward-moving seatback structure, of his head possibly contacting his

---

[2] The *Thomson* court also recognized that any deficiencies in the application of facts to the expert's methodology should go to the weight of the expert's testimony and not to admissibility. **Id.** at 587

3

headrest (giving Mr. Breaux the benefit of the doubt on this issue since his deposition testimony was that no part of his body made contact with his vehicle after the impact, other than his seatback), of the plaintiff experiencing some unnatural extension of his neck followed by forward flexion during the rebound and of the plaintiff's foot possibly coming off his brake pedal naturally follow his opinions about velocity, delta v and conservation of momentum. Dr. Bain's testimony that there was little differential movement between Breaux's thorax and lumbar spine post-impact and that the plaintiff may have suffered a mild reflexive muscle strain in his lower back also follows his opinions about velocity, delta v and conservation of momentum.

Dr. Bain's expertise and training as an engineer and as a board-certified 19-year emergency room physician who has treated hundreds of automobile accident victims and who has read countless x-rays and MRIs provide the "knowledge, skill, experience, training, or education" necessary to testify in the areas of biomechanics and vehicle impact analysis. In addition, the bases for Dr. Bain's opinions in the areas of biomechanics (deals with the effects of mechanical forces on the human body, and uses the laws of physics to analyze and explain the forces encountered during life), occupant kinematics (movements made by a person in response to an impact event) and vehicle impact analysis (reconstruction of event dynamics and determination of energy and forces involved) flow from his diverse professional background as a physician and engineer and are supported by numerous peer-reviewed studies as outlined by Dr. Bain in his affidavit and hearing testimony. In fact, the plaintiffs offered no testimony or argument that the studies were not peer-reviewed or were somehow not based on reliable foundation or methodology. To the contrary, Dr. Bain testified that the studies were widely accepted in the biomechanical field. Plaintiffs offered no rebuttal on this

issue.

## III. Causation of Lumbar Disc Protrusions and Herniations

Dr. Bain's opinion testimony that disc herniations and protrusions are the result of a slow degenerative process that usually starts in an individual's third decade of life and that lumbar disc protrusions and herniation are not the result of a one-time loading event unless bone disruption occurs are based on peer-reviewed studies in the medical/biomechanical fields. This discipline of injury causation analysis examines the causal relationship between injuries and forces, is widely-accepted in the biomechanical field and combines biomechanics and medicine. Dr. Bain's unique professional training as an engineer and physician qualify him to give this professional testimony

The United States District Court for Kansas very recently denied a plaintiff's motion in limine which sought to exclude the testimony of Dr. Bain in a rear-end impact collision involving greater speed and more serious injuries. *Sport v. Continental Western Insurance Co.*, Case No. 04-1386 (Kansas March 10, 2006) (a copy of the Court's ruling is attached). In rejecting the plaintiff's arguments that Dr. Bain's opined on matters for which he had no expertise and that his opinions were based on assumptions, speculation and unreliable data, the court found as follows:

> With respect to medical issues, Dr. Bain is a trained physician with 19 years' experience as an emergency room doctor. In the course of his work he frequently treated individuals involved in vehicle accidents and has expertise in reviewing x-rays and MRI films. With respect to "injury causation analysis," Dr. Bain has an undergraduate degree in engineering and completed a three-week course at Northwestern University in 2003 concerning accident reconstruction. In addition, Dr. Bain has produced approximately 350 injury causation reports and co-authored a paper on vehicle accidents ("Analytical Model for Investigating Sideswipe Collisions"). Under the circumstances, Dr. Bain possesses sufficient training and experience to qualify as an expert.

5

The court also finds that Dr. Bain's testimony is based on sufficient facts or data under Rule 702(1). In making his calculations concerning the delta V of plaintiff's truck, Dr. Bain reviewed 19 photographs of the vehicles, deposition testimony, witness statements, the accident report, weight of the vehicles, crush stiffness of the car from accident reconstruction literature, underride guard regulations, and measurements of the vehicles. Dr. Bain then utilized a computer software program widely used in the United States to analyze vehicle accidents (EDCRASH) to determine the delta V. Dr. Bain also calculated the delta V of the plaintiff's truck by referring to published literature concerning accident reconstruction and "crush analysis."

* * *

Although plaintiff argues that Dr. Bain's opinions are not grounded in legitimate science, the court is persuaded that the methodology and principles employed by Dr. Bain are scientifically sound and based on facts sufficient to satisfy Rule 702's reliability requirement. The methodology utilized by Dr. Bain to reach his opinions in this case was a "process analysis" or step-wise procedure in which each subsequent step builds upon its predecessor. In the context of vehicle collisions, his sequential approach involved the following steps:

1. analysis of the vehicle dynamics;
2. analysis of occupant kinematics;
3. analysis of biomechanics;
4. determination of injury potential; and
5. validation through medical analysis.

The analysis of vehicle dynamics, in this case the change in velocity of plaintiff's truck (delta V), is nothing more that the application of mathematical formulas and research literature to a set of variables to arrive at a number. The use of mathematical formulas and models to estimate the force and/or changes in velocity of objects is an accepted and reliable scienttific method commonly taught in college physics classes. Similarly, the analysis of occupant kinematics (body movement) is grounded in physics and observable experiments that are easily recreated. The third and fourth steps were determined through reference to published literature, an accepted basis for developing an opinion. Finally, the fifth step, validation through the review of other facts, also reflects reliability and a scientific approach. The testimony of Dr. Bain is "the product of reliable principles" and he has "applied the principles reliably to the facts of this case." Fed R. Evid. 702(2). In this case the relation between the expert's method, the proffered conclusions, and the factual circumstances renders the testimony both reliable and relevant.

Defendants respectfully suggest that the Kansas court's ruling is consistent with Daubert, Kumho Tire and their Fifth Circuit Court of Appeals progeny. The Kansas ruling is also consistent with Dr. Bain's history of never having been excluded as a witness in federal court and never having been excluded in a state court which held a Daubert hearing.

## CONCLUSION

Dr. Bain's analysis is critical to the defendants' case, where he has reliably demonstrated a limited exertion of force on the plaintiff. It would be impracticable to expect a jury to be able to simply view the property damage photographs in this case, and determine whether the plaintiff's injuries were consistent with such photographs. The plaintiffs' criticism of an expert's reliance on photographs without physical vehicle inspection of the actual vehicles is also misplaced since low impact analysis experts rarely have the opportunity to physically inspect vehicles before they are repaired and placed back into service. Further, plaintiffs cite no authorities or expert evidence of their own to refute Dr. Bain's testimony, methodology, authorities relied upon, or opinion. The jury should be provided the opportunity to review the investigation and analysis conducted by Dr. Bain so it may make an educated and informed finding. Rule 702 of the Federal Rules of Evidence does not provide for exclusion of Dr. Bain's testimony under these circumstances, particularly where the plaintiffs will have the opportunity to fully cross-examine Dr. Bain on the facts underlying his analysis at trial. Accordingly, Dr. Bain should be allowed to testify at trial.

As the aforementioned facts and application of federal jurisprudence establish, Dr. Bain fulfils the requirements for reliability and therefore, should be allowed to testify before the jury

7

regarding his findings in this matter. The plaintiffs will have the full opportunity to address such issues of bias, and the factual basis of Dr. Bain's testimony under cross-examination at trial.

Accordingly, based upon the foregoing facts, legal principles and authorities, defendants respectfully request this Honorable Court deny the plaintiffs' Motion in Limine to Exclude the Expert Witness Testimony *in toto.*

Respectfully Submitted:

**CASTEEL & ASSOCIATES, LLC**

_____
Durward D. Casteel, #18830 (T.A.)
Gregory D. Callihan, #27984
Casey H. Hargroder, #29590
138 McGehee Drive
Baton Rouge, Louisiana 70815
Telephone: (225) 273-4442
Facsimile: (225) 273-4448
**Counsel for Defendants,
Werner Enterprises, Inc. and John Holland**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Supplemental Memorandum in Opposition to Plaintiffs' Motion in Limine has been sent via facsimile and mailed, postage prepaid, this date, to the following:

>Mr. Michael Hingle
>MICHAEL HINGLE & ASSOCIATES, LLC
>600 Hwy 190, Ste. 202-C
>Covington, Louisiana 70433
>Counsel of Record for Plaintiffs,
>**MARVIN C. BREAUD AND VICKI BREAUD**

>Mr. Joseph S. Piacun
>GENNUSA LAW FIRM
>4405 North I-10 Service Road, Suite 200
>Metairie, Louisiana 70006-6564
>Counsel of Record for Plaintiffs,
>**MARVIN C. BREAUD AND VICKI BREAUD**

>Mr. John A. London III
>Attorney at Law
>10988 North Harrells Ferry, Suite 18A
>Baton Rouge, Louisiana 70816
>Counsel of Record for Intervenor,
>**Bridgefield Casualty Insurance Company**

Baton Rouge, Louisiana, this 15th day of March, 2006.

_____
Durward D. Casteel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD SPORT,            )
                         )
         Plaintiff,      )
                         )
v.                       )   Case No. 04-1386-KMH
                         )
CONTINENTAL WESTERN      )
INSURANCE COMPANY,       )
                         )
         Defendant.      )
_____)

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff's motion to limit the testimony of defendant's expert, Dr. Charles Bain. (Doc. 54). On March 8, 2006, the court conducted a *Daubert* hearing at which time the parties had an opportunity to question defendant's expert and present relevant evidence.[1] For the reasons set forth below, the motion shall be DENIED. The following background provides necessary context for the motion and the court's ruling.

---

[1] Marc Powell appeared on behalf of the defendant. Brad Pistotnik, Dustin DeVaughn, and Donald Snook appeared on behalf of the plaintiff. Dr. Bain participated by telephone.

## Background

Highly summarized, this is an action to recover insurance benefits related to a January 2003 traffic accident which occurred while plaintiff was driving his employer's truck on K-96 Highway in Sedgwick County, Kansas. David Sheats, an uninsured motorist, was traveling in the same direction and drove his car into the back of plaintiff's dump truck.[2] Plaintiff contends that the accident injured his neck, lower back, and left leg and required multiple surgeries. Because Mr. Sheats was uninsured, plaintiff seeks "uninsured motorist" insurance benefits from the insurer of the truck, Continental Western Insurance Company.

Continental contends that the rear-end collision did not cause plaintiff's injuries and damages. In support of its defense, Continental retained an expert witness, Dr. Bain, whose opinions are summarized as follows:

- Based on accident reconstruction software and other computations, the impact-related change in velocity (delta V) of the truck was less than 6 miles per hour.

- If Mr. Sport were subjected to a delta V as high as 6 miles per hour, his impact-related motion would have consisted of: 1) his torso moving into the forward-moving seat back structure, 2) his head would have contacted the headrest/seat back or rear window, 3) extension of his neck would have occurred followed by forward flexion, 4) the neck movement would not have exceeded normal physiologic range of motion, 5) his feet would likely come away from the floor pedals, and 6) his hands would probably have released the steering wheel.

- A majority of volunteer test subjects exposed to this severity of rear-

---

[2] Mr. Sheats apparently fell asleep while driving. For purposes of this lawsuit, defendant agrees that Mr. Sheats caused the accident.

-2-

  end impact have reported no symptoms and a number of subjects reported muscular neck discomfort lasting less than two weeks. An important aspect of treatment is a return to normal activities as soon as possible, typically within one week.

- There would have been little differential movement between Mr. Sport's thorax and lumbar spine and therefore no mechanism for injury to his lower back. While a mild reflexive muscle strain to his lower back was possible, any associated symptoms would have resolved within several days.

- Findings of disc herniations and protrusions are the result of a slow degenerative process that usually starts in the third decade of life and a significant number of asymptomatic people will have these findings. Lumbar disc protrusions and herniations are not the result of a one-time loading event unless there is bone disruption during the event.

- Mr. Sport was involved in a low speed rear-end impact that subjected him to minimal forces that had no serious or long-term injury potential. Any muscular neck pain would have resolved without treatment within four weeks and any muscular back pain would have resolved without treatment within days. Any other diagnoses and treatments were unrelated to the accident.

Plaintiff argues that Dr. Bain opines on matters for which he has no expertise and that his opinions are based on assumptions, speculation and unreliable data.[3] The parties' arguments are discussed in greater detail below.

### Admissibility of Expert Testimony

It is now well established that Fed. R. Evid. 702 imposes a "gatekeeper" obligation

---

[3] Specifically, plaintiff seeks to preclude Dr. Bain from testifying concerning: 1) the change in velocity of the vehicles, 2) the forces to which plaintiff was subjected, 3) the expected body movement of plaintiff, and 4) that the collision was of insufficient force to injure the plaintiff and that plaintiff's injuries were related to other factors.

on the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). This obligation has a two-part inquiry. First, "[A] district court must determine if the expert's proffered testimony ... has a 'reliable basis in the knowledge and experience of his [or her] discipline.'" Bitler v. A.O. Smith Corp., 391 F. 3d 1114, 1120 (10th Cir. 2004)(quoting Daubert, 509 U.S. at 589). Second, the district court must inquire into whether the proposed testimony is sufficiently "relevant to the task at hand." Daubert, 509 U.S. at 597. A proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." Mitchell v. Gencorp Inc., 165 F.3d 778, 780 (10th Cir. 1999). However, a proponent is not required to prove that the expert is "undisputably correct or that the expert's theory is generally accepted in the scientific community." Id. Rather, a party must show that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." Id.

In performing its gatekeeper function, the Supreme Court has suggested that courts consider: (1) whether a theory has been or can be tested or falsified, (2) whether the theory has been subjected to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has general acceptance. Daubert, 509 U.S. at 593-94. However, the Court has made clear that this list is neither definitive nor exhaustive and that a trial judge has wide discretion both in

deciding how to assess an expert's reliability and in making a determination of that reliability. Kuhmo Tire. Co. v. Carmichael, 526 U.S. 137, 150 (1999).

As noted above, the court conducted an evidentiary hearing to assist in determining the admissibility of Dr. Bain's expert testimony at trial. Based on the doctor's testimony and curriculum vitae, the court is satisfied that he is qualified as an expert by "knowledge, skill, experience, training, or education" as required by Rule 702. With respect to medical issues, Dr. Bain is a trained physician with 19 years' experience as an emergency room doctor. In the course of his work he frequently treated individuals involved in vehicle accidents and has expertise in reviewing x-rays and MRI films.[4] With respect to "injury causation analysis," Dr. Bain has an undergraduate degree in engineering and completed a three-week course at Northwestern University in 2003 concerning accident reconstruction.[5] In addition, Dr. Bain has produced approximately 350 injury causation reports and co-authored a paper on vehicle accidents ("Analytical Model for Investigating Sideswipe Collisions"). Under the circumstances, Dr. Bain possesses sufficient training and experience to qualify as an expert.

The court also finds that Dr. Bain's testimony is based on sufficient facts or data under

---

[4] Plaintiff attacks Dr. Bain's medical expertise based on his lack of *specialization* in orthopedics. However, Dr. Bain has medical knowledge concerning orthopedics and this argument goes to the weight of his testimony.

[5] Plaintiff argues that Dr. Bain's degree is in "nuclear" (not biomechanical) engineering and that his undergraduate degree should therefore be discounted. However, Dr. Bain testified that the physics and formulas he uses in his analysis are fundamental concepts covered by all first and second year engineering students. The court is satisfied that Dr. Bain's educational background in engineering has assisted him in calculating the change in vehicle velocity.

Rule 702(1). In making his calculations concerning the delta V of plaintiff's truck, Dr. Bain reviewed 19 photographs of the vehicles, deposition testimony, witness statements, the accident report, weight of the vehicles, crush stiffness of the car from accident reconstruction literature, underride guard regulations, and measurements of the vehicles. Dr. Bain then utilized a computer software program widely used in the United States to analyze vehicle accidents (EDCRASH) to determine the delta V. Dr. Bain also calculated the delta V of plaintiff's truck by referring to published literature concerning accident reconstruction and "crush analysis." Although plaintiff's cross-examination of Dr. Bain raised valid issues concerning the use of photographs and whether a more accurate calculation could be made based on actual inspection of the vehicles, such arguments go to the weight, rather than admissibility of the opinions.[6]

Although plaintiff argues that Dr. Bain's opinions are not grounded in legitimate science, the court is persuaded that the methodology and principles employed by Dr. Bain are scientifically sound and based on facts sufficient to satisfy Rule 702's reliability requirement. The methodology utilized by Dr. Bain to reach his opinions in this case was a "process analysis" or step-wise procedure in which each subsequent step builds upon its predecessor. In the context of vehicle collisions, his sequential approach involved the following steps:

---

[6]  Dr. Bain acknowledged that photographs are not as accurate as viewing and measuring the damaged vehicles. However, because of the potential for error, he testified that he allowed for such discrepancies and gave the benefit of the doubt to plaintiff when expressing his opinion that the delta V was six miles per hour.

1. analysis of the vehicle dynamics;
2. analysis of occupant kinematics;
3. analysis of biomechanics;
4. determination of injury potential; and
5. validation through medical analysis.

The analysis of vehicle dynamics, in this case the change in velocity of plaintiff's truck (delta V), is nothing more than the application of mathematical formulas and research literature to a set of variables to arrive at a number. The use of mathematical formulas and models to estimate the force and/or changes in velocity of objects is an accepted and reliable scientific method commonly taught in college physics classes. Similarly, the analysis of occupant kinematics (body movement) is grounded in physics and observable experiments that are easily recreated. The third and fourth steps were determined through reference to published literature, an accepted basis for developing an opinion. Finally, the fifth step, validation through the review of other facts, also reflects reliability and a scientific approach. The testimony of Dr. Bain is "the product of reliable principles" and he has "applied the principles reliably to the facts of this case." Fed. R. Evid. 702(2). In this case the relation between the expert's method, the proffered conclusions, and the factual circumstances renders the testimony both reliable and relevant. Bitler, 391 F.3d at 1121.

**IT IS THEREFORE ORDERED** that plaintiff's motion to limit the testimony of Dr. Charles Bain **(Doc. 54)** is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 10th day of March 2006.


S/ Karen M. Humphreys
───────────────────────
KAREN M. HUMPHREYS
United States Magistrate Judge

-8-