FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2006 MAR 17 P 1:27

SIGN____
BY DEPUTY CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARVIN C. BREAUD & | ) | CIVIL ACTION |
| VICKI BREAUD | ) | NO.: 03-CV-860 |
| Plaintiffs | ) | |
| | ) | SECTION "D" |
| versus | ) | JUDGE BRADY |
| | ) | |
| WERNER ENTERPRISES | ) | MAGISTRATE "1" |
| OF NEBRASKA & JOHN HOLLAND | ) | MAGISTRATE JUDGE RIEDLINGER |
| Defendants | ) | |

## POST-HEARING MEMORANDUM

Plaintiffs, Marvin C. Breaud and Vicki Breaud, respectfully submit this Post-Hearing Memorandum in further support of their Motion in Limine to exclude the proposed expert testimony of Dr. Charles Bain.

### Introduction

Defendants propose to introduce the purported expert testimony of Dr. Charles Bain in the fields of "biomechanics" and "injury causation." Dr. Bain's proposed testimony should be excluded because (1) Dr. Bain is not qualified to testify regarding causation of Mr. Breaud's spinal injuries; and (2) Dr. Bain's proposed opinions are unreliable as a matter of fact, medicine, and science.

1. **Dr. Bain is Not Qualified to Testify Regarding Causation of Mr. Breaud's Spinal Injuries.**

Dr. Bain trumpets his education and experience as a nuclear engineer and family medicine physician, but he conspicuously ignores a fatal flaw in his background: Dr. Bain is not, has never been, ***and has never been qualified as an expert*** neurosurgeon, orthopedic surgeon, or any other physician that specializes in treatments of spinal disorders. Dr. Bain has never performed spinal surgery, and has no medical education, training, or experience in treating spinal



disorders. As with any other family practitioner, Dr. Bain testified that in his practice he would refer a patient presenting with a serious spinal disorder to a specialist, *i.e.*, a neurosurgeon or orthopedic surgeon. Dr. Bain has no active medical practice and does not currently treat any patients (let alone spinal patients) – his work is restricted exclusively to reading medical records for litigation cases at his "consulting" outfit: the "Biodynamic Research Corporation" ("BRC").

Despite this admitted lack of qualification to treat spinal disorders, Dr. Bain proposes to testify beyond his area of medical experience and into the "cause" of Mr. Breaud's spinal injuries. Dr. Bain did not examine Mr. Breaud, and has ***never bothered to examine <u>any</u> of the literally hundreds of people that insurance companies and litigation defendants have paid him to render an injury causation opinion.*** Other Louisiana courts have excluded so-called physician "injury causation experts" – specifically including at least 3 other BRC "consultants" – finding that they simply were not qualified to render such an opinion. In *Keener v. Mid-Continent Casualty*, 817 So.2d 347 (La. App. 5th Cir.), *writ denied*, 825 So.2d 1175 (La. 2002), the Louisiana Fifth Circuit Court of Appeals struck a BRC so-called physician injury causation expert (Dr. Lloyd) finding that the purported expert was simply <u>not</u> qualified "by educational background, training, expertise, or experience to testify regarding the possible causation of [plaintiff's] disc injury." *Id.* at 353. The Court explained:

> [Dr. Lloyd] had been employed by BRC for approximately a year and a half. He had never given a paper or seminar on lumbar disc disease to any physicians, nor was he currently treating any patients for spinal injuries. He admitted that he did not claim to be a specialist in spinal injuries, nor did he hold himself out as a radiologist, an orthopedic doctor, or a neurologist or neurosurgeon. Dr. Lloyd agreed that these fields would be better trained in the diagnosis and care of the human spine.
>
> Dr. Lloyd testified that a good percentage of his consulting with BRC involved insurance companies who were defendants in motor vehicle accidents. He acknowledged that he had testified in only one trial previously, in Texas, and had given a deposition in only one spinal case involving a motor vehicle. Dr. Lloyd

2

was trained in accident reconstruction, but said he didn't claim to be an accident reconstruction specialist, but a specialist in injury causation analysis. He had never been qualified in any court as an expert in accident reconstruction.

*Id.* at 352. The Court concluded that Dr. Lloyd simply lacked the "educational background, expertise, and experience in both spinal injuries and their relationship to motor vehicle accidents." *Id.* at 353.

Similarly, BRC "consultants" Dr. Thomas McDish has been excluded by at least one Louisiana court, and BRC "consultant" Dr. Scott Krenrich has been excluded at least 3 times by Louisiana courts. Dr. Bain acknowledged that most of the consultants in BRC have had their testimony limited at one point or another, and Dr. Bain even announced that *several weeks ago his proposed testimony was excluded.*[1] Further, Dr. Bain holds no degree and never taken a single undergraduate, postgraduate, or medical class in "biomechanics," "biomechanical engineering," or "injury causation." The extent of Dr. Bain's so-called "biomechanical" and "injury causation" expertise is his consulting experience at BRC – an outfit that has been financed and paid millions of dollars exclusively by insurance companies and other litigation defendants to generate "opinions" that claimants are *never* hurt. Dr. Bain is simply not qualified to render an opinion (whether couched in "biomechanics" or "injury causation") regarding Mr. Breaud's spinal injuries. Dr. Bain's proposed testimony should be excluded.

---

[1] Dr. Bain heralds that he was recently accepted to testify by a district judge in Kansas. *Sport v. Continental Western Ins. Co.*, No. 04-1386 (D.C. Kansas 2006). A cursory review of the district judge's Order reveals that it is a factually different case involving an allegedly injured occupant of a large dump truck that was struck by a much smaller vehicle. That case did not involve an 18 wheeler striking the rear of a utility trailer attached to the occupant's vehicle. Further, the district judge acknowledged serious questions regarding Dr. Bain's reliance of only photographs and repair estimates in generating his opinions. *Id.* at *5.

## 2. Dr. Bain is Admittedly Not an Accident Reconstruction Expert.

Dr. Bain admits the obvious: he is not, and does not hold himself out be, an expert in accident reconstruction. The extent of his so-called education in traffic accident reconstruction is completing a short 2-part non-college accredited course at the Northwestern University Traffic School. Dr. Bain is not certified as an accident reconstructionist by any professional organization or institution, and he is not a member of any professional accident reconstruction organization, association, or society. Dr. Bain, not surprisingly, has *never* been accepted as an expert in accident reconstruction by any court. Dr. Bain, likewise, has absolutely no experience in the operation of commercial trucks, and does not hold himself out as an expert in the operation of commercial trucks.

Despite this admitted absence of any expertise in the field of accident reconstruction or commercial trucking, Dr. Bain's injury causation opinions are premised on his exclusive attempts to reconstruct this 18 wheeler collision. Dr. Bain never inspected the collision site or any of the vehicles; Dr. Bain reviewed and relied exclusively on the utility trailer repair estimate, photographs of the trailer and rear of Mr. Breaud's vehicle (but no photographs of the 18 wheeler), deposition transcripts, and Mr. Breaud's medical records. Dr. Bain admitted that he did not know virtually any of fundamental facts of the underlying collision, including:

- The distance between the vehicles before impact;

- The distance Mr. Breaud's vehicle and utility trailer traveled before being struck by Mr. Holland's 18 wheeler;

- The distance Mr. Holland's 18 wheeler traveled before striking the rear of Mr. Breaud's utility trailer;

- The time that Mr. Holland's 18 wheeler accelerated prior to striking the rear of Mr. Breaud's utility trailer;

4

- The speed of Mr. Holland's 18 wheeler at the time that it struck the rear of Mr. Breaud's utility trailer;

- The force required to bend the tongue of the utility trailer;

- The force required to damage the rear of the utility trailer;

- The speed required of Mr. Holland's 18 wheeler to bend the tongue of the utility trailer; or

- The speed required of Mr. Holland's 18 wheeler to damage the rear of the utility trailer.

With no direct knowledge of any of these critical facts, Dr. Bain instead referenced an accident reconstruction textbook to estimate all of these facts. This is clearly insufficient to qualify as a legitimate expert accident reconstruction analysis of the collision, and renders his "conclusions" ridiculously suspect and of virtually no legitimate scientific value. The Fifth Circuit has been very critical of such "experts" espousing dubious accident reconstruction opinions:

> The [district court] ascertained that [the witness] 1) had never conducted any studies or experiments in the field of accident reconstruction 2) did not take any measurements or collect any data from the accident scene in this case; 3) did not examine the tires or other mechanical parts involved in the accident; 4) based his calculations on publicly accessible data published by the National Highway Transportation Safety Administration; and, 5) was unable to show that his training or experience as a mechanical engineer gave him expertise in the field of accident reconstruction that was distinguishable from training received by other mechanical engineers. Based on all these facts, the court refused to qualify [the witness] as an expert witness and sustained the appellees' objection.

*Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). In affirming the district court's exclusion of proposed accident reconstruction testimony, the Fifth Circuit found "significant deficiencies in [the witness'] experience and professional training leading ineluctably to the impression that his 'expertise' in accident reconstruction was no greater than that of any other individual with a general scientific background." *Id.* at 938.

Here, Dr. Bain admits that he is **not** an expert in accident reconstruction, and does **not** seek acceptance by this Court as an expert in accident reconstruction. Dr. Bain never consulted with an accident reconstruction expert, yet his report and conclusions are rife – and utterly dependant on – an expert accident reconstruction analysis. Dr. Bain is ***unquestionably and admittedly unqualified*** to render any expert accident reconstruction opinions, and he should not be permitted to do so in this case.

### 3. Dr. Bain's Opinions are Unreliable as a Matter of Fact.

Dr. Bain testified that he used the accident reconstruction data he "collected" and estimated in reaching his conclusions regarding the speed of Mr. Holland's 18 wheeler at impact, and ultimately in calculating the change of velocity (or "Delta V"). Dr. Bain admitted the obvious: if the accident reconstruction data he relied on was inaccurate or incorrect, then his conclusions would likewise be inaccurate or incorrect. Indeed, Dr. Bain admitted that if Mr. Holland's 18 wheeler traveled more than 10 feet before striking the rear of Mr. Breaud's utility trailer, Mr. Holland's speed would be greater, and the "Delta V" would be greater. As indicated, however, Dr. Bain does not know the actual distance Mr. Holland's 18 wheeler traveled and conceded that his 10 foot assumption was "arbitrary." Mr. Bain also admitted that the speed of the 18 wheeler was affected by many variables he did not know, including the type of engine, engine horsepower, engine's fuel injection system, axle ratio, gear ratio, transmission ratio, or even how far Mr. Holland pressed the accelerator. Further, Dr. Bain admitted that he was unaware of a single published article or other study that could verify or validate his accident reconstruction findings or conclusions, and Dr. Bain performed no testing to verify or validate his opinions. Likewise, Dr. Bain did not cite a single study, article, or textbook that validated his method of estimating the purported change of velocity by using photographs, repair estimates,

police report, depositions, and medical records. Because the accident reconstruction data relied on by Dr. Bain is suspect and invalid, his resulting "Delta V" opinions are likewise invalid, suspect, and ultimately unreliable. Dr. Bain's opinions should be excluded.

> 4. **Dr. Bain's Opinions are Unreliable as a Matter of Generally Accepted Neurological Medicine and Science.**

Dr. Bain proposes to testify that it is impossible for any person (including Mr. Breaud) to sustain a spinal injury in a rear-end motor vehicle collision of less than 5 miles per hour. Dr. Bain further espouses the opinion that a disc can never be injured as a result of trauma without the surrounding vertebra first breaking. Acknowledging that the generally accepted opinion of neurosurgeons, neurologists, orthopedic surgeons, and the rest of the medical community disagrees with these conclusions, Dr. Bain couches his fringe opinion as generally accepted within the "biomechanic" community. Biomechanics are not physicians (let alone spinal surgical specialists), and are woefully unqualified to render opinions regarding causation of spinal disc injuries. Dr. Bain, likewise, is admittedly not qualified to render opinions regarding spinal disc injuries. But whether wearing his hat as a "biomechanic" or family practitioner or both, Dr. Bain's opinions are just flat wrong and contrary to the generally accepted and tested opinions of spinal surgeons and neurological specialists – of which Dr. Bain is not.

Dr. Bain concedes that he is unaware of any studies attempting to determine the anticipated injuries to an occupant of a vehicle having a 38,000 pound 18 wheeler crashed into its rear – let alone an 18 wheeler crashing into the rear of a utility trailer connected to the rear of the occupant's vehicle. Dr. Bain has not conducted any such studies, and none of the studies he references and relies on extended their "findings" to this situation. It is therefore impossible to test or validate Dr. Bain's opinions he attempts to apply to this case.

7
Case 3:03-cv-00860-JJB-SCR   Document 94   03/17/06   Page 7 of 9

Finally, Dr. Bain generally relies on various biomechanic "studies" that purport to show the absence of injury on purported "low impact" rear-end collisions. These "studies" are nothing more than descriptive reports of small sample sizes of participants subjected to controlled "low-impact" collisions.[2] All of the studies relied on by Dr. Bain merely reported their findings. Dr. Bain admits that not a single "study" involved a sample size remotely statistically representative of the entire population – and none of the studies attempted to develop a statistical framework for application of their "findings" to the entire population. (Because these studies were merely descriptive studies, Dr. Bain can falsely trumpet that "they do not contain an error rate.").

But Dr. Bain and his cohorts at BRC attempt to project these limited descriptive report findings to the entire population, suggesting that if the small number of people involved in a study claimed not be injured in a particular controlled impact, then absolutely no one could ever be injured. Dr. Bain and his BRC cohorts have never developed a statistical framework for attempting to apply their opinions to all 6 billion human inhabitants of the planet. Likewise, Dr. Bain and his BRC cohorts have never: (1) developed a rate of error in applying their opinions to the general population; or (2) developed control standards in applying their opinions to the general population. These are fundamental requirements of the scientific process identified by the Supreme Court in *Daubert* in identifying whether a purported opinion is truly scientific. When expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

Had Dr. Bain and his cohorts at BRC bothered to develop a rate of error for their opinions, they could then explain how some people suffer serious spinal injuries in seemingly benign collisions, while other people walk away from catastrophic collisions. A fundamental

---

[2] Some of the "studies" relied on by Dr. Bain were conducted at BRC using a handful of BRC employees.

principal of medicine is that every patient is different and may respond differently to medication, treatment, and trauma. Dr. Bain and his BRC cohorts ignore this fundamental medical principal, and rely on their supposed new law of "biomechanics" to universally apply a flawed and biased medical opinion to the entire population. This is the precise type of junk science the Supreme Court has repeatedly urged lower courts to exclude in their gatekeeping function. Dr. Bain's opinions should be excluded.

### Conclusion

For these reasons, and for the reasons previously asserted, Plaintiffs' Motion in Limine should be granted.

Respectfully submitted,

JOSEPH S. PIACUN, T.A. (25211)
THOMAS A. GENNUSA, II (6010)
Gennusa Law Firm
833 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 455-0442
Facsimile: (504) 455-7565

-and-

MICHAEL HINGLE (6943)
AUSTIN McELROY (7571)
600 North Highway 190, Suite 202C
Covington, Louisiana 70433
Telephone: (985) 893-2295
**Attorneys for Plaintiffs,
Marvin & Vicki Breaud**

Certificate of Service

I certify that on March 15, 2006, I served a copy of this *Post-Hearing Memorandum* on all counsel of record by facsimile and the United States Mail, properly addressed and first class postage prepaid.